UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23020-CIV-SCOLA/BANDSTRA

ABCO PREMIUM FINANCE LLC

    Plaintiff,

vs.

AMERICAN INTERNATIONAL
GROUP, INC., UNITED STATES
FIRE INSURANCE COMPANY,
and NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

    Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING U.S. FIRE'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment Against Defendant United States Fire Insurance Company (ECF No. 47) and Defendant United States Fire Insurance Company's ("U.S. Fire") Cross-Motion for Summary Judgment (ECF No. 66). National Union Fire Insurance Company of Pittsburgh, PA ("National Union") has also filed a Response to Plaintiff's Motion for Summary Judgment (ECF No. 64).

I. BACKGROUND

This action involves a coverage dispute arising out of a financial institution bond (hereinafter, the "bond") issued by Defendant U.S. Fire to Plaintiff ABCO Premium Finance LLC ("ABCO") and an Excess Insurance Policy (hereinafter, the "excess policy") issued by Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and American Insurance Group ("AIG") to ABCO.

"A financial institution bond is a type of fidelity bond that is designed to insure financial institutions against fraudulent or unfaithful dealings by employees and certain outside parties which could damage the institution. Insofar as the law applicable to [interpreting a financial institution bond] is concerned, the bond is just another insurance policy." *Am. Cas. Co. of*

1

*Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1284 (11th Cir. 2002). "A financial institution bond is essentially an insurance policy that indemnifies a bank for losses caused by dishonest acts." *Hudson United Bank v. Progressive Cas. Ins. Co.*, 284 F. Supp. 2d 249, 252 (E.D. Pa. 2003).

The bond in the instant case provided ABCO up to $2 million in coverage for crime and fidelity losses during the effective policy period of April 24, 2009 to April 24, 2010. The excess policy followed the form of the bond and provided additional coverage up to $3 million throughout the same period of time. The bond and excess policy were purchased by ABCO in contemplation of a purchase agreement in which ownership of ABCO was transferred from Hub International U.S. Holdings Inc. ("HUB") to Fortun Holdings, Inc. ("Fortun").

ABCO is an insurance premium financing company. The Seventh Circuit has provided a digestible explanation of the mechanics of this industry in a case involving another insurance premium financing company:

> "In this role, [ABCO] provides loans to businesses that seek to finance the payment of their annual insurance premiums. Typically, these businesses obtain financing from [ABCO] through an independent insurance broker. More precisely, a business seeking insurance coverage hires an independent insurance broker for a dual purpose; the broker not only procures insurance coverage for the business but also obtains the necessary financing for this purchase from an insurance premium finance company such as [ABCO].
>
> If the broker and its business client select [ABCO] to finance the transaction, the parties document the loan through a standardized finance agreement. To expedite the loan application process, [ABCO] provides brokers with blank premium finance agreements as well as related computer software. Using this material, the broker assists its business client in filling out the loan agreement. Once the broker and client complete and sign the finance agreement, they forward the document to [ABCO] which then must review and approve the application. Once [ABCO] approves the loan, it disburses the loan amount to the broker who, in turn, pays the insurance premium on behalf of its client."

*First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 802 (7th Cir. 2002).

Around July 24, 2009, ABCO discovered that it had been a victim of a fraud scheme perpetrated by an individual named Jose Vicente Peris ("Peris") who was working for ABCO under a Producer Agreement between ABCO and Insurance Force Corporation ("Insurance Force"). Peris was the owner of Insurance Force. A central disagreement between the parties is whether Peris can be considered an employee of ABCO or whether instead he was an insurance broker for Insurance Force. Regardless of Peris' classification, he had sufficient access to

2

ABCO's blank premium finance agreements and its computer software to perpetuate a multi-million dollar fraud scheme.

As early as March 2007, Peris began submitting thousands of fraudulent premium financing contracts to ABCO, each of which triggered a draft on ABCO's account and into Peris' own bank account at Bank of America. Peris handwrote his Bank of America account number on each draft, which were then returned to ABCO. For each fraudulent contract Peris submitted, he also made multiple, monthly loan re-payments to ABCO, ostensibly to give ABCO the impression that the contracts were issued to real customers. All of these re-payments were drawn from Peris' Bank of America bank account. By the time the scheme was discovered in July 2009 by Hector Fortun, the managing member of ABCO, Peris had submitted over 3,000 fraudulent contracts to ABCO totaling almost $7 million in losses.

As a result of Peris' fraud, ABCO filed claims with Defendants seeking indemnification under the bond and excess policy. When Defendants' denied the claims, ABCO filed this suit alleging claims for breach of contract and attorney's fees. ABCO has now moved for summary judgment against Defendant U.S. Fire, seeking summary judgment on its two claims and on U.S. Fire's eighteen affirmative defenses. U.S. Fire has opposed ABCO's motion and moved for cross-summary judgment. Defendant National Union has also filed its opposition to ABCO's motion for summary judgment (ECF No. 64).

II. LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to

3

demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is a 'genuine' issue 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1336 (S.D. Fla. 2009)(quoting *Anderson*, 477 U.S. at 248).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court." *Fabricant v. Kemper Independence Ins. Co.,* 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007)(citing *Graber v. Clarendon Nat'l Ins. Co.,* 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). "Where . . . a contract is clear and unambiguous and does not involve any absurdities or contradictions, it is the best evidence of the intent of the parties, and its meaning and legal effect are questions of law for determination by the court alone." *Am. Medical Intern., Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th DCA 1984). "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). Only in cases of "genuine inconsistency, uncertainty, or ambiguity" may a court interpret a policy against the insurer and in favor of coverage. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979). "The fact that analysis is required for one fully to comprehend [a contract] does not

4

mean the contracts are ambiguous." *Hess v. Liberty Mut. Ins. Co.*, 458 So. 2d 71, 72 (Fla. 3rd DCA 1984).

III. ANALYSIS AND CONTROLLING AUTHORITY

ABCO and Defendant U.S. Fire have filed cross-motions for summary judgment on five issues. First, whether ABCO has ownership over the claims in its complaint or whether its assignment of these claims to another entity is still in effect. Second, whether Peris was an "employee" of ABCO as that term is defined in the bond. Third, when ABCO actually discovered or should have discovered the Peris fraud and thus whether ABCO provided U.S. Fire with timely notice of the loss. Fourth, whether ABCO's claim for losses caused by the Peris fraud is barred by the retroactive date rider provisions. Fifth, whether ABCO can recover attorney's fees against U.S. Fire and National Union.

The Court finds that ABCO is entitled to summary judgment that it owns the claims, but that genuine issues of material fact exist with regards to whether Peris was an employee of ABCO and whether ABCO provided U.S. fire with timely notice of the loss. The Court further finds that U.S. fire is entitled to summary judgment that the retroactive date rider provision precludes ABCO's claim for losses caused by the Peris fraud. Therefore, ABCO cannot recover attorney's fees from U.S. Fire.

ABCO has moved for summary judgment against National Union only on the issue of attorney's fees. ABCO will be entitled to attorney's fees from National Union only in the event that ABCO secures a judgment against that Defendant. Therefore, this issue is not ripe for ruling.

A. Defendants' Motion to Strike Evidence Submitted in Plaintiff's Replies

Before addressing the motions for summary judgment, the Court addresses the collateral motions to strike pending before the Court. In the Plaintiff's Replies to the Defendants' Responses to Plaintiff's Motion for Summary Judgment, the Plaintiff submitted additional evidence to support its arguments for summary judgment. [ECF Nos. 79 and 80]. The Plaintiff filed a Supplemental Declaration of Hector Fortun, Exhibits to Mr. Fortun's Supplemental Declaration, the Declaration of Diane L. Fitzgerald, and the Declaration of Jose Suarez. The Defendants moved to strike these four additional pieces of evidence on the grounds that they

5

represent new evidence in violation of S.D. Fla. Local Rule 7.1(c) which provides that replies "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition."

While the "raising of new issues and submission of new facts in reply brief is improper," a court has the discretion to consider the additional exhibits despite this "procedural shortcoming." *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 311 n.82 (S.D. Ala. 2006). Additionally, the Local Rules permit affidavits and declarations to be filed with replies. S.D. Fla. Local Rule 7.1(c). Finally, Defendants' Motions to Strike are futile because the Plaintiff properly submitted the same four exhibits in its Response to U.S. Fire's Cross-Motion for Summary Judgment [ECF No. 91]. "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Accordingly, the Court will consider these four exhibits that Plaintiff submitted as evidence in relation to its opposition to Defendant U.S. Fire's Cross-Motion for Summary Judgment and deny the motions to strike.

B. <u>Whether ABCO has ownership over the claims against Defendants</u>

In its cross-motion for summary judgment, U.S. Fire argues that there is a question of material fact regarding whether ABCO owns the claims it has asserted against Defendants. The question arises because ABCO had previously assigned all claims against third parties related to the Peris fraud to Hub International Holdings Inc. ("Hub"), the previous owner of ABCO. This assignment was done on September 17, 2009, after ABCO had filed its notice of claim with U.S. Fire but before it had filed any proof of loss. As the new owner of the claims, HUB submitted a proof of loss to U.S. Fire on January 14, 2010. Then on March 16, 2011, Hub and ABCO entered an agreement to terminate the assignment of the claims to Hub, and reassign ownership to three entities: ABCO, Fortun Holdings, LLC, and Hector Fortun. U.S. Fire contends that ABCO has not proved its ownership of the claims at issue because ABCO had not produced a copy of the March 2011 agreement in which HUB transferred back the claims to ABCO. ABCO has produced a copy of this agreement, rendering this argument moot.

U.S. Fire has not supported its allegation that ABCO does not own the claim with any evidence of its own, but argued in its cross-motion for summary judgment that it has not had the opportunity to conduct sufficient discovery on this issue to justify its opposition. U.S. Fire has moved for this court to deny ABCO's motion for summary judgment on this issue pursuant to

6

Fed. R. Civ. P. 56(d) on the grounds that it has been unable to depose Fortun or Peris and has not received ABCO's responses to U.S. Fire's requests for production of documents. These discovery requests were the subject of U.S. Fire's Motion to Compel (ECF No. 50) filed on February 10, 2012 which was granted in part on March 13, 2012 (ECF No. 73). U.S. Fire filed its Reply in support of its cross-motion for summary judgment (ECF No. 105) on April 12, 2012 and in that reply did not argue that it was still missing discovery evidence and again did not provide evidence supporting its contention that ABCO was not the owner of the claims. Accordingly, there appears to be no material facts in dispute regarding ABCO's ownership of the claims and ABCO's motion for summary judgment is granted on this issue.

C. <u>Whether Peris was an "employee" of ABCO as that term is defined in the bond</u>

In its motion for summary judgment, the Plaintiff argues that Peris' fraud triggered coverage under Insuring Agreement (A) of the bond which provides coverage for losses sustained as a result of certain fraudulent acts committed by an ABCO employee. In its cross-motion for summary judgment, Defendant U.S. Fire argues that the Peris fraud is not covered by this provision because Peris was not an ABCO employee. Defendant National Union has subscribed to this argument in opposing the Plaintiff's motion for summary judgment.

The relevant provisions in the Insuring Agreement state in part:

INSURING AGREEMENTS

FIDELITY

(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:

(a) To cause the insured to sustain such loss; and

(b) To obtain financial benefit for the Employee or another person or entity.

Bond at p.1.

The bond defines an employee to mean:

(4) Each natural person, partnership or corporation authorized by the insured to perform services as data processor of checks or other accounting records of the insured (not including preparation or modification of computer software or programs) herein called Processor

7

Bond at p.5 under Definitions Section.

Non-employees are explicitly excluded from coverage under the terms of the bond in exclusion (r) which precludes coverage for:

> (r) loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities, commodities, money, mortgage, real estate, loan, insurance, property management, investment banking broker, agent, or other representative of the same general character

"Where the intention of the parties as to who are employees is expressed in a fidelity policy, that intention will be given effect." *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 232 (1st Cir. 1993)(citing 13 Ronald A. Anderson and Mark S. Rhodes, *Couch on Insurance 2d,* § 46:25 at 33 (1982)). The unambiguous interpretation of these provisions is that if ABCO authorized Peris to perform data processing services, then Peris was an "employee" under the terms bond. But if Peris was a non-employee, then the fraud he perpetrated would be excluded from coverage under the bond. "The bond places squarely on [ABCO] the risk associated with dishonest or fraudulent conduct perpetrated against it by a certain class of entities." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 806 (7th Cir. 2002). The Court notes that proof that Peris was an insurance agent or broker is not sufficient to exclude his fraud from coverage because the capitalization of "non-Employee" in exclusion (r) references and incorporates the definition of "employee" as defined earlier in the bond. Therefore, coverage depends, in part, on whether Peris was authorized to perform data processing services, regardless of whether he was an agent or broker as well.

The Plaintiff argues that Peris was authorized by ABCO to perform services as a data processor of checks and therefore qualifies as an employee as that term is defined by the bond. ABCO supports this classification of Peris with the affidavits of Peris and Hector Fortun, the Managing Member of ABCO. Peris' affidavit states that he is a "producer/processor with ABCO," and that to fulfill his fraud scheme he "logged onto ABCO's computer system . . . and processed an ABCO draft or check on ABCO's account." Peris Aff. ¶¶ 3, 7. Fortun's affidavit states that Peris performed the following services for ABCO: Peris quoted the finance agreement from ABCO's accounting system, Peris prepared and processed the financing agreements; Peris signed and authenticated the financing agreements; Peris used ABCO's computer system to

8

process drafts drawn on ABCO's account; Peris received payments from customers and processed checks received from customers. Fortun Aff. ¶ 8.

Defendants argue that Peris does not qualify as an employee because his classification and scope of duties is defined wholly by the Producer Agreement entered into between Peris' company, Insurance Force, and ABCO. According to Defendants, the Producer Agreement clearly states that there is no employment relationship between ABCO and Insurance Force and defines Insurance Force to be an insurance agent or broker. The Agreement states in part: "This Agreement or the relationship between the parties and their officers and employees is not intended, and shall not be construed, to create a partnership, joint venture or employment relationship between [ABCO and Insurance Force]. [Insurance Force] is for all purposes an independent contractor." Producer Agreement ¶ 7. The Agreement also contains language which describes Insurance Force as an "agent or broker" or as a "managing general agent." *Id.* at ¶ 2, 3, 12. Moreover, Defendants' argue the Producer Agreement does not grant Peris any authority to conduct any data processing.

Defendants further argue that Fortun's affidavit is insufficient evidence of any authorization by ABCO to Peris. The Defendants argue that the Plaintiff has failed to establish that Fortun is competent to testify on whether Peris worked as a data processor for ABCO because Fortun did not own ABCO for most of the time that the fraud occurred and there is no evidence that he had personal knowledge of Peris' specific duties. Defendants contend that Peris' authorization could only have derived from the Producer Agreement between ABCO and Insurance Force, not the duties described in Fortun's affidavit.

There are two federal cases which have interpreted virtually identical provisions as the one at issue in the instant case. In *Hudson United Bank v. Progressive Cas. Ins. Co.*, 152 F. Supp. 2d 751 (E.D. Pa. 2001), a district court held that a corporation that provided "processing, servicing, marketing and consulting services" to an insurance premium finance company could be classified as an "employee" under that bond which defined an employee as "each natural person, partnership or corporation authorized to perform services as data processor of checks or other accounting records." *Hudson United Bank*, 152 F. Supp. 2d at 753, 755. The court found the complaint's allegations that the corporation's duties included entering and transmitting accounting data provided sufficient factual support to survive a motion to dismiss. *Id.* at 754-55.

9

The *Hudson* court's decision has only limited applicability to the instant case because that court stopped short of ruling whether the evidence presented on the individual's duties actually made him an employee as defined by the bond in that case. Ruling on a motion to dismiss, the *Hudson* court held that the complaint's allegations made it *possible* that the corporation could be considered an employee, but did not establish whether this classification could be decided as a matter of law. The *Hudson* court only had to consider whether the complaint's allegations supported the plaintiff's claim, not whether the plaintiff had put forth sufficient evidence to prove its claim.

In *F.D.I.C. v. St. Paul Co.*, the insured had entered into a Marketing, Processing, and Consulting Agreement with Century Financial Services ("Century") to offer the insured's credit card to Century's customers. *F.D.I.C. v. St. Paul Co.*, 634 F. Supp. 2d 1213, 1217 (D. Colo. 2008). Century's owners eventually operated a fraud scheme against the insured that created losses worth approximately $40 million. *Id.* At issue in the *St. Paul Companies* action was a bond provision that also defined an employee as "each natural person, partnership or corporation authorized by the Insured to perform services as data processor of checks or other accounting records of the Insured . . . ." *Id.* at 1220.

In *St. Paul Co.*, the court found that the insured had failed to establish Century was the insured's employee under the bond's definition for two reasons. First, the terms of the agreement between the insured and Century refuted the allegation that the company was an employee of the insured. The court noted that "[w]hile the word 'processing' is used, Article IV of the MPCA, titled 'Processing of Transactions; Handling of Funds,' states that 'Bank shall select an independent processing operation ("IPO") to process Card transactions.'" *Id.* at 1220. Because the agreement "specifically addresse[d] the selection of a third-party processor for handling payments," the agreement refuted the allegation that the company was a processor for the insured. *Id.* Second, the court found that the insured failed to establish that the company was authorized to perform as a processor or that it, in fact, did so. *Id.* The evidence presented by the insured actually suggested that the insured believed the processing, including the processing related to the fraud, was being done elsewhere, not by Century. *Id.*

The *St. Paul Co.* case is instructive in so far as it supports Defendants' contention that the terms of the Purchaser Agreement provide evidence of what duties Peris was authorized to perform by ABCO. However, unlike the agreement in *St. Paul Co.*, the Purchaser Agreement in

10

the instant case makes no mention of ABCO retaining an independent processor, and there is at least some evidence provided in Fortun and Peris's affidavits that Peris performed processing services for ABCO as part of his authorized duties. The Defendants' arguments that the Producer Agreement defines Peris as an independent contractor does not address the critical question of whether he was authorized to perform data processing by ABCO. The bond's definition of employee does not turn on whether Peris was described to be an agent or broker in the Purchaser Agreement, but rather on whether he was authorized to perform data processing for ABCO or not by that Agreement. The Purchaser Agreement can be evidence of what duties Peris was authorized to perform, but its use of the terms insurance agent or broker does not refute the contention that Peris may have been authorized to perform data processing.

The Plaintiff has submitted declarations and affidavits in support of its position that Peris was so authorized, but the Defendants have objected to it. In its Objections to ABCO's Undisputed Facts and U.S. Fire's Statement of Additional Undisputed Facts (ECF No. 67), Defendant U.S. Fire states that "a genuine issue of fact exists preluding summary judgment in favor of ABCO as to whether Peris was so authorized." (ECF No. 67) at ¶ 7. Likewise, in its cross-motion for summary judgment, U.S. Fire has submitted the Purchaser Agreement as evidence that Peris' duties did not include data processing, and the Plaintiff has objected to Defendants' interpretation of that Agreement. Accordingly, there are genuine issues of material fact that preclude summary judgment on the issue of whether Peris was authorized to perform services as data processor of checks or other account records.

D. <u>Whether ABCO provided timely notice of the loss</u>

Plaintiff argues in its motion for summary judgment that it performed all of its obligations under the bond, including providing timely notice of its loss. The Defendants argue that genuine issues of material fact exist as to when ABCO discovered the fraud, and thus whether its notice and proof of loss were timely under the bond terms. The following provisions govern the notice procedures of the bond:

DISCOVERY

Section 3, This bond applies to loss discovered by the Insured during the Bond Period. Discovery of loss occurs when the insured first becomes aware of facts which would cause a reasonable person to assume that a loss of the type covered by this bond/policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

NOTICE/PROOF – LEGAL PROCEEDINGS AGAINST UNDERWRITER

Section 5.
  (a) At the earliest practicable moment, not to exceed thirty days, after discovery of loss, the Insured shall give the Underwriter notice thereof.
  (b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss . . .

The Plaintiff alleges that on or around July 24, 2009, it discovered Peris' fraud through its own investigation. Defendants' have not accepted this date and contend further discovery is necessary to establish the date of discovery with certainty. Regardless of when the fraud was discovered, it is undisputed that on July 30, 2009, ABCO sent U.S. Fire notice of its claim. Before ABCO submitted its proof of loss to U.S. Fire, ABCO assigned all claims against third parties to HUB. On January 14, 2010, HUB, as the assignor of these claims, filed a proof of loss to U.S. Fire. Subsequently, HUB's assignment of rights terminated and reverted back to ABCO. ABCO then filed an amended Proof of Loss. U.S. Fire subsequently denied ABCO's claim utilizing the amended Proof of Loss.

As a preliminary matter, ABCO argues that U.S. Fire waived its right to object to coverage on the basis of untimely notice because U.S. Fire possessed enough information to permit it to deny the claim on other grounds. Plaintiff quotes dicta from *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255, 1262 (M.D. Fla. 2009) for the proposition that "Florida courts have uniformly held that where an insured possesses enough information to permit it to deny the claim on other grounds (and it actually did deny the claim on other grounds), it waives its right to object to coverage on the basis that the insured failed to provide timely notice of the claim." ABCO is correct that Florida law requires insurers of certain types of insurance policies to affirmatively prove that they were prejudiced by the insured's untimely notice in order to deny the claim on that ground. *See Hartford Accident and Indemn. Co. v. Phelps*, 294 So. 2d 362, 365 (1974). However, the Florida Supreme Court has held that the prejudicial finding is not applicable to a claims-made or discovery policy such as the financial bond that was issued to ABCO. "Occurrence policies cover acts which occur in the life of the policy, irrespective of when the claims are asserted against the insured. In comparison, a claims-made policy only protects the insured against claims *made and reported* during the policy period." *Pantropic Power Prod., Inc. v. Fireman's Fund Ins. Co*., 141 F. Supp. 2d 1366, 1369 (S.D. Fla. 2001). "In essence, coverage is 'triggered' by the insured's discovery of a claim

and the provision of notice to the insurer within the policy term." *Id.* "[T]he [Florida] supreme court has rejected applicability of the [notice-prejudice] rule to claims-made policies, observing that any extension of the reporting period would 'negate[ ] the inherent difference between the two contract types.'" *Id.* (citing *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515 (Fla. 1983)). Therefore, U.S. Fire has not waived its right to object to coverage on the basis of untimely notice.

The Court must now address the Defendants' arguments that material facts are in dispute regarding when ABCO discovered the Peris fraud and whether its notice to U.S. Fire was timely. Under Florida law generally, "anything short of actual discovery on the part of the insured . . . will not defeat recovery under a fidelity bond." *Dixie Nat. Bank of Dade Cnty. v. Emp'r Comm. Union Ins. Co. of Am.*, 463 So. 2d 1147, 1152 (Fla. 1985). However, parties are free to contractually agree to a narrower liability provision. In *Royal Trust Bank, N.C. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA.*, 788 F.2d 719, 720 (11th Cir. 1986), the parties' fidelity bond included a virtually identical provision as the bond in the instant case: "Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred." At trial in that case, the insurer put forth evidence that the bank could have discovered the fraud in that action "if officers had paid closer attention to computer records and reports that were reviewed regularly." *Id.* The district court then instructed the jury that "the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances." *Id.* at 721. The Eleventh Circuit affirmed the district court's jury instructions and held that "negligence or inattention on the part of the bank precluded recovery" under the specific terms of the bond. *Id.* Accordingly, coverage could be precluded based not only on when ABCO discovered the claim but also on when it could have first discovered it.

The Plaintiff has provided July 2009 as the date on which it allegedly discovered the Peris fraud, but has not addressed whether this was the earliest date on which the fraud could have been discovered. The Defendants challenge ABCO's discovery date and argue that evidence exists from which a jury could conclude that ABCO actually discovered or should have discovered the Peris fraud before July 2009. This evidence includes: that signs of the fraud existed in ABOC's business records for a substantial period of time; that ABCO had regular

opportunities to observe these signs; and that the signs were such that a reasonable person would have investigated the records and learned of the fraud. Additionally, ABCO has admitted that over eighteen ABCO employees had knowledge of the facts concerning the underlying claims, and in his affidavit, Fortun stated that his discovery of irregularities in ABCO's business records was what led him to confront Peris about the fraud.

Accordingly, material factual disputes preclude summary judgment on when ABCO discovered or should have discovered the Peris fraud and therefore whether ABCO's notice and proof of loss were timely.

E. Whether ABCO's claim is barred by the "Single Loss" and retroactive rider provisions

The parties agree that the bond applies prospectively only and that any fraudulent or dishonest acts occurring prior to April 24, 2009 are specifically excluded from coverage by the retroactive date rider provision. However, the parties disagree on the proper interpretation of the term "Single Loss" as it is used within the retroactive date rider provision.

The bond provisions regarding these entwined issues are as follows:

RETROACTIVE DATE RIDER

It is agreed that:

2. The attached Policy is further amended by inserting the following as Section 3:

Section 3.
RETRO ACTIVE DATE – APRIL    24,      2009
                             month   day    year

This bond/policy applies only to a Single Loss, as defined in section 4, which was sustained in its entirety after the Retroactive Date set forth above. All acts or omissions causing or contributing to such Single Loss . . . must occur after the Retroactive Date for coverage under this bond/policy to apply. Such Single Loss must be discovered by the Insured during the Bond/Policy period.

LIMIT OF LIABILITY

Single Loss Defined

Single Loss means all covered loss, including court costs and attorneys' fees . . . resulting from

> (a) any one act or series of related acts of burglary, robbery or attempted threat, in which no Employee is implicated, or
> (b) any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or

14

>  (c) all acts or omissions other than those specified in (a) or (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated . . .

While the parties agree that the retroactive date rider on restricts coverage to events after that date, they disagree on the correct interpretation of the "Single loss" term as it's used in the retroactive date rider. In its motion for cross-summary judgment, Defendant U.S. Fire argues that Peris' fraud constituted a "Single loss" that began as early as 2007, and therefore is not covered by the policy because it was not sustained in its entirety after April 24, 2009, the retroactive rider date. ABCO does not dispute that Peris' fraud began in 2007, but responds that it only seeks to recover losses incurred after the retroactive date and that a portion of the losses caused by the Peris fraud qualify as a "Single loss" because that term includes all "covered losses" that occurred after the retroactive date. Defendant National Union has joined U.S. Fire's arguments in opposing the Plaintiff's motion for summary judgment on this issue.

ABCO makes a two-step argument in support of its position. First, the term "Single Loss" is indisputably defined in the bond as "all covered loss." Second, the retroactive date indisputably excludes from coverage any losses that were sustained before the retroactive date. Therefore, the term "Single loss" presupposes that the loss occurred after the retroactive date because otherwise it would not be considered a "covered loss." In other words, there can never be a "Single loss" that would be precluded from coverage by the retroactive date because the term "Single loss" is defined as "all covered loss." Applied to the facts of this case, as long as the Peris fraud qualifies as a "covered loss," then ABCO is entitled to coverage for losses it incurred from that fraud after the retroactive date, but not before that date. The retroactive date provision would not affect whether the fraud was covered, but only set the date after which the losses can be recovered. Although ABCO initially filed a claim for losses both before and after the retroactive date, it amended the claim to losses incurred after the retroactive date when U.S. Fire denied the original claim on the basis of the retroactive date provision. This amendment is a harbinger for the fallacy of ABCO's interpretation of the bond's terms.

The purpose of specifying a retroactive date in an insurance policy is to limit coverage to occurrences after a certain date. "Insurers issuing claims-made policies 'protect themselves against liability for old occurrences by including a 'retroactive date' specifying the earliest occurrence to be covered, no matter when the claim is made.'" *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1082-83 (7th Cir. 2007)(quoting *Nat'l Cycle, Inc. v. Savoy Reins. Co., Ltd.,* 938 F.2d

15

61, 62 (7th Cir.1991)). "A very restrictive type of claims-made insurance will require 'not only that the claim be both made and reported to the insurer during the policy period, but also that the claim arise out of wrongful acts that take place after the inception of the policy and during the policy period.'" *Id.* at 1083 (quoting BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES (Aspen Publishers 13th ed. 2006), Vol. 1, § 4.02[b], p.130).

ABCO's interpretation would be compelling if not for the fact that it completely ignores the retroactive rider's further limitation of the term "Single loss" to one which was "sustained in its entirety after the retroactive date." To properly interpret the bond, "all of the provisions, words and parts must be construed together as one entire contract." *TIG Ins. Co. v. Smart School*, 401 F. Supp. 2d 1334, 1342 (S.D. Fla. 2005). The language of the retroactive provision is clear and unambiguous that the bond only covers fraudulent schemes that began entirely after the retroactive date. It is undisputed that the Peris fraud began in early 2007 and that the majority of the fraud was committed prior to the retroactive date. Almost 2,000 of the 3,400 fraudulent contracts that Peris created were submitted to ABCO before the retroactive date, and thus $4 million of the $6.9 million in losses were incurred prior to the retroactive date.

Moreover, ABCO cannot recover losses for just that portion of losses it incurred after the retroactive date. These losses cannot be covered because the retroactive rider provision states that "[a]ll acts or omissions causing or contributing to such Single Loss . . . must occur after the Retroactive Date for coverage under this bond/policy to apply." U.S. Fire argues that ABCO's losses were caused by all of Peris' fraudulent acts, which began before the retroactive date, and therefore constitute one "Single loss." U.S. Fire's argument finds support in *Omega Advisors, Inc. v. Fed. Ins. Co.*, 2010 WL 4941457 (D.N.J. Nov. 30, 2010), in which the district court rejected the insured's argument that it experienced two separate and independent losses and only sought coverage for the portion that occurred after the retroactive bond in that case. The insured in *Omega Advisors* had discovered a loss caused by an employee's fraud scheme in 2006, but did not make a claim on the bond until 2008 when it discovered new information regarding the fraud. *Id.* at *1-3. The court found that all the employee's acts that caused the loss to the insured "resulted in a single loss" and therefore could not "be a newly discovered loss separate and distinct from the loss discovered by [the insured] in 2006." *Id.* at *8 (citing *F.D.I.C. v. Fidelity & Deposit Co. of Md.*, 45 F.3d 969, 974 (5th Cir. 1995)(later discovered acts were part of the same

loss discovered during bond period if they "arose out of the same pattern of conduct or scheme that was originally discovered.")). *See also, Citizens Bank of Newburg v. Kansas Bankers Surety Co.*, 971 F. Supp. 1301, 1304 (E.D. Mo. 1997)(rejecting the insured's attempt to split up its losses because each fraudulent document was part of "one common scheme to defraud" the insured). Despite ABCO's attempt to divide the fraud by only filing a claim for losses incurred after the retroactive date, Peris' affidavit establishes that he engaged in the same scheme each time he submitted a fraudulent contract to ABCO. ABCO cannot contend that Peris' fraud was committed in two distinct and separate acts; the fraud was indisputably one continuous act.

Accordingly, there are no genuine issues of material fact on the issue of whether the Peris fraud was a "Single loss" under the bond term and U.S. Fire's cross-motion for summary judgment is granted on this issue. Therefore, ABCO's claim for losses caused by the Peris fraud is barred by the retroactive date rider provision.

F. <u>Whether ABCO can recover attorney's fees</u>

The Plaintiff moved for reimbursement of reasonable attorney's fees under Fla. Stat. § 627.428(1) which provides, in part:

> Upon the rendition of a judgment . . . against an insurer and in favor of any . . . insured . . . the trial court . . . shall adjudge or decree against the insurer and in favor of the insured . . . a reasonable sum as fees or compensation for the insured's . . . attorney prosecuting the suit in which the recovery is had.

However, no judgment has been issued against the insurer which would trigger attorney's fees under this statute. An insured's "right to attorney's fees does not accrue until the 'rendition of a judgment.'" *Evanston Ins. Co. v. Lauris Boulanger, Inc.*, 2010 WL 556522, *2 (S.D. Fla. Feb. 11, 2010). The Court has not issued a final judgment for the Plaintiff, and in fact has granted Defendant U.S. Fire's cross-motion for summary judgment. Accordingly, the Plaintiff's request for attorney's fees is denied as moot with respect to U.S. Fire, and denied with leave to renew with respect to National Union if a judgment is entered in favor of the Plaintiff.

IV. <u>CONCLUSION</u>

THE COURT has reviewed the arguments, the record, and the relevant legal authorities, and for reasons set forth more fully below, it is **ORDERED and ADJUDGED** that

(1) U.S. Fire and National Union's Motions to Strike Evidence (ECF Nos. 88 and 89) that Plaintiff filed in its Reply to support its Motion for Summary Judgment are **DENIED**.

(2) Plaintiff's Motion for Summary Judgment Against Defendant U.S. Fire (ECF No. 47) is **DENIED**.

(3) U.S. Fire's Cross-Motion for Summary Judgment (ECF No. 66) is **GRANTED**. Summary judgment is granted that the retroactive date rider provision precludes coverage of the Peris fraud.

**DONE and ORDERED** in chambers, at Miami, Florida, on August 9, 2012.

                                              **ROBERT N. SCOLA, JR.**
                                              **UNITED STATES DISTRICT JUDGE**

Copies to:
*Designated U.S. Magistrate Judge*
*Counsel of record*